**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1091
_____

C. G. B.

v.

AIDA SANTA LUCIA;
VAROUJAN KHOROZIAN;
KYLE KHOROZIAN;
DEREK KHOROZIAN,

Defendant-Appellants
_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-15-cv-03401)
District Judge: Hon. Susan D. Wigenton
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 14, 2018
_____

Before: GREENAWAY, JR., SHWARTZ, and BIBAS, Circuit Judges.

(Filed: November 15, 2018)

_____

OPINION*
_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SHWARTZ, <u>Circuit Judge</u>.

Defendants Aida Santa Lucia, Varoujan Khorozian, Kyle Khorozian, and Derek Khorozian (collectively, "Defendants") appeal the District Court's order (1) denying their third request for a continuance of an evidentiary hearing to resolve an allegation that Plaintiff C.G.B. breached a settlement agreement and (2) granting C.G.B.'s motion to enforce the settlement agreement and denying Defendants' motion to rescind or reform it. For the reasons that follow, we will affirm.

I

C.G.B. sued Defendants for violations of the Victims of Trafficking and Violence Protection Act of 2000, <u>see</u> 18 U.S.C. §§ 1589, 1595, and related state law claims. C.G.B. alleged that she was a former teacher in Cameroon who was trafficked into the United States to perform forced labor. The parties eventually settled the dispute. According to C.G.B., however, Defendants later attempted to add new material terms to the settlement agreement.[1] Consequently, C.G.B. moved to enforce the settlement agreement.

In response, Defendants asserted that C.G.B. breached the confidentiality clause of the settlement agreement by disclosing the settlement amount, and that this breach warranted either the agreement's rescission or reformation. In support of their cross-

_____

[1] In particular, Defendants sought to add provisions (1) requiring C.G.B. to sign a French translation of the agreement; (2) prohibiting C.G.B. from providing testimony in other cases against Defendants; (3) allowing "all parties" to use discovery produced in this lawsuit; and (4) requiring that C.G.B. voluntarily dismiss this lawsuit before receiving the settlement checks. ECF No. 98 at 1-2.

motion to rescind or reform the settlement agreement, Defendants included an affidavit from a Cameroonian government official, Emmanuel Anyang Asongwed, who stated that the Cameroonian government learned about the claims in the case and the resulting settlement.

On October 3, 2017, the Magistrate Judge ordered the parties to appear for a hearing on October 13, 2017, so Defendants could present evidence of C.G.B.'s purported breach of the settlement agreement. Two days later, certain Defendants requested a continuance of the October 13, 2017 hearing. Defendants explained that witnesses from Cameroon needed time to obtain their visas and travel to the United States for the hearing. The Magistrate Judge denied the request, observing that Defendants' proposed witnesses lacked "first-hand personal knowledge of [C.G.B.'s] alleged disclosure of the confidential terms of the parties' settlement." ECF No. 145. In response, Defendants represented that two Cameroonian nationals, Asongwed and Nicholas Atangana, had "direct knowledge" of C.G.B.'s disclosure of confidential information. App. 205. The Magistrate Judge then granted the request, adjourned the hearing until October 16, 2017, and informed Defendants that the Court would "agree to take [the Cameroonian witnesses'] testimony via Skype or some other remote means." ECF No. 176 at 13.

Thereafter, Defendants requested a second continuance based on the witnesses' inability to access videoconferencing equipment or to secure visas in time to attend the hearing. The Magistrate Judge continued the evidentiary hearing once more to October 26, 2017. Cognizant of the potential technological issues of remote testimony, the

3

Magistrate Judge noted that the continuance "should give plenty of time to arrange to get on a webcam on a laptop . . . ." ECF No. 177 at 11.

At the start of the October 26, 2017 evidentiary hearing, Defendants informed the Court that Asongwed was present to testify, but they requested a third continuance so that Atangana could testify at a later date. According to Defendants, Atangana could not testify remotely by videoconference because he went to the United States Embassy in Cameroon to obtain a visa. The Magistrate Judge denied the request because Defendants provided "no reason for Mr. Atangana to make himself unavailable to testify remotely at the hearing in order to seek a visa to travel to the United States to testify in person." App. 033.

Defendants then presented Asongwed's testimony. Asongwed testified that C.G.B. called him, years after the only time they met, to discuss the money she received from her settlement with Defendants. When the Court asked if he knew that it was C.G.B. who called him, Asongwed testified that he was uncertain, but when questioned by Defendants' counsel, he said that the call was with C.G.B. Asongwed was also questioned about how C.G.B. came to contact him and confronted with contradictions between his testimony and his affidavit. No other evidence was offered to support Defendants' assertion that C.G.B. disclosed confidential information about the settlement.

The Magistrate Judge rejected Asongwed's testimony. The Magistrate Judge found, among other things, that Asongwed was not credible because his testimony was inconsistent with his affidavit, he did not provide a reason as to why C.G.B. called him or

4

how she obtained his telephone number, he could not identify C.G.B. as the caller with certainty, his testimony was evasive, and Defendants and their agents "influenced improperly" his testimony. App. 031. As a result, the Magistrate Judge recommended granting C.G.B.'s motion to enforce the settlement agreement and denying Defendants' motion to rescind or reform it.

The District Court adopted the Magistrate Judge's Report and Recommendation. Defendants appeal.

## II[2]

Defendants argue that the District Court erred in (1) denying Defendants' third request for a continuance; and (2) denying their cross-motion for rescission or reformation of the settlement agreement and granting C.G.B.'s motion to enforce it. We consider each argument in turn.

## A

"A trial court's decision to deny a continuance will only be reversed on a showing of abuse of discretion." Paullet v. Howard, 634 F.2d 117, 119 (3d Cir. 1980). Indeed, "[w]e will not interfere with a trial court's control of its docket except upon the clearest showing that the procedures have resulted in actual and substantial prejudice to the complaining litigant." In re Fine Paper Antitrust Litig., 685 F.2d 810, 817 (3d Cir. 1982) (internal quotation marks and citation omitted).

---

[2] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

Defendants sought a third continuance so that Atangana could appear in person or by videoconference to testify. The Magistrate Judge had previously granted two continuances, which gave Defendants nearly two additional weeks to coordinate their witnesses' appearances or, alternatively, present such testimony by videoconference. Thus, Defendants had sufficient time and means to adduce the testimony.

Defendants sought a third continuance at the start of the October 26, 2017 hearing, explaining that Atangana decided to visit the embassy to obtain his visa rather than make himself available to appear by video. Defendants gave "no reason" why Atangana could not testify by videoconference as permitted by the Magistrate Judge, App. 033, and any harm Defendants suffered from his absence was based on his decision to not participate remotely. Accordingly, the Magistrate Judge acted well within her discretion in denying the last-minute request for a third continuance.

B

We next examine the order granting C.G.B.'s motion to enforce the settlement agreement and denying Defendants' cross-motion to rescind or reform it. In reviewing the enforcement of a settlement agreement, we evaluate the district court's factual findings for clear error, Tiernan v. Devoe, 923 F.2d 1024, 1031 n.5 (3d Cir. 1991); Fed. R. Civ. P. 52(a)(6) ("Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility"), and we review the court's legal conclusions de novo, Covington v. Cont'l Gen. Tire, Inc., 381 F.3d 216, 218 (3d Cir. 2004).

6

Defendants' only argument on appeal is that their witness, Asongwed, testified to C.G.B.'s discussion of the settlement amount and that C.G.B. provided no evidence to the contrary. This argument fails for two related reasons. First, the Magistrate Judge found that Asongwed's testimony was not credible. "[A]ssessments of witness credibility . . . are wrapped up in evaluations of demeanor that a trial judge is in a better position to decide," and we defer to such assessments unless there is clear error. United States v. Brown, 631 F.3d 638, 643 (3d Cir. 2011). The Magistrate Judge's negative views about Asongwed's credibility were well supported. For example, Asongwed first said that C.G.B. called him to discuss the settlement amount, but when the Magistrate Judge pressed him for further details, he said, "I will not say with certainty" that it was C.G.B. on the phone. ECF No. 209 at 20. Thus, the Magistrate Judge had a basis to conclude that Defendants produced no credible evidence that C.G.B. disclosed the settlement amount to Asongwed or anyone else. Additional support for this conclusion comes from Asongwed's affidavit, which stated that the Government of Cameroon "came to learn of the settlement of a lawsuit . . . and of the claims that [C.G.B.] made" in March 2017, but made no mention of any contact with C.G.B. ECF No. 102-3 at 2. Furthermore, the Magistrate Judge noted problems with Asongwed's demeanor and equivocation when testifying. Based on these factually supported credibility determinations, the decision to discount Asongwed's testimony was not clear error.

Second, in the absence of any credible evidence that C.G.B. breached the confidentiality clause of the settlement agreement, it was not error for the District Court to grant C.G.B.'s motion to enforce the settlement agreement and deny Defendants'

motion to rescind or reform it.  Defendants had the burden of providing "clear and convincing proof" that the agreement should be rescinded.[3]  <u>Nolan ex rel. Nolan v. Lee Ho</u>, 577 A.2d 143, 146 (N.J. 1990) (internal quotation marks omitted).  Defendants sought to rescind or reform the agreement because C.G.B. allegedly breached the agreement by discussing its monetary terms.  Because it was not error for the District Court to discredit the only evidence adduced on this point, and Defendants provided no other evidence to support their request for relief, they did not make the requisite showing to justify rescission or reformation.  <u>See</u> <u>Brundage v. Estate of Carambio</u>, 951 A.2d 947, 961-62 (N.J. 2008) (explaining New Jersey's policy in favor of settlements and that courts should honor settlements "absent compelling circumstances.") (quoting <u>Nolan</u>, 577 A.2d at 472)).  Accordingly, the District Court appropriately granted C.G.B.'s motion to enforce the settlement agreement and denied Defendants' motion to rescind or reform it.

III

For the foregoing reasons, we will affirm.

---

[3] The parties agree that New Jersey contract law governs the dispute.

8